**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BEN RETHERFORD** and **SUSAN BLACKBURN**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**PENN ENTERTAINMENT, INC.**<br><br>Defendant. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Ben Retherford and Susan Blackburn ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against PENN Entertainment, Inc. ("Defendant" or "PENN") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel, review of Plan documents, and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for an employer to require employees to pay more for health coverage because they use tobacco while withholding a promised premium credit unless the employer complies with ERISA's wellness-program requirements. PENN does exactly that. Under the PENN Entertainment, Inc. Employee Benefits Program (the "Plan"), PENN promises a monthly "Wellness Credit" to participants who meet a tobacco-use standard. A participant who does not meet that standard pays more for the same medical coverage. ERISA permits that differential only if PENN makes available a compliant reasonable alternative standard, provides

the same, full reward to participants who satisfy it, and gives the notice the law requires. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D)–(E).

2. Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe-harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3. ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan fails to clearly establish a *reasonable* alternative standard that informs

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

employees of their right to avoid the entire annual amount of surcharges, does not notify employees of their rights to a physician-directed alternative to avoid the surcharge, does not ensure that "all similarly situated individuals" who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

5. Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to make available a reasonable alternative standard that provides "the same reward" as those who meet the initial health outcome (i.e., non-tobacco-users), by operating a non-compliant penalty structure rather than a lawful wellness incentive, and by failing to clearly notify participants of all the avenues available to them to avoid the surcharge. These failures prevent PENN from taking advantage of the statutory safe harbor allowing for discriminatory surcharges.

6. Defendant cannot qualify for the statutory safe harbor because its Wellness Credit program fails mandatory conditions that "must be satisfied" for a health-contingent wellness program to be lawful. 78 Fed. Reg. at 33160. The Plan makes the Wellness Credit fifty dollars ($50) per month. A tobacco user may qualify through an alternative standard, but PENN requires

[4] *See* Final Regulations, 33163 (emphasis added); *see also* 29 C.F.R. § 2590.702(f)(1)(v) "requiring individuals who are identified as outside the normal or healthy range (or at risk) to take additional steps . . . to obtain ***the same reward***") (emphasis added).

the participant to complete an Alternative Standard Request form, register within 30 days of the request, and attend at least 80% of an Approved Tobacco Cessation Program within 210 days. *See* Summary Plan Description ("SPD") at 22–23. Upon information and belief, participants who miss any of these deadlines cannot obtain the credit. The SPD then states only that, once those requirements are satisfied, the Wellness Credit "will be applied in the current Plan Year." It does not state that the participant will receive the full credit for the months that passed while the participant requested, registered for, and completed the alternative standard.

7. That omission matters because the regulations require the "same, full reward" for the entire Plan Year. *See* Final Regulations, 33163 (emphasis added); *see also* 29 C.F.R. § 2590.702(f)(1)(v). PENN's SPD expressly reserves PENN's right to recover the Wellness Credit retroactively for the applicable Plan Year if a participant submits false information or fails to report a change in tobacco status, but the SPD does not provide the mirror-image protection required by ERISA: it does not tell a participant who satisfies the alternative standard that PENN will restore the Wellness Credit retroactively for the portion of the Plan Year before completion. SPD at 23. A program that can take up to 210 days to complete, while the participant continues paying the higher premium, cannot provide the "full reward" if the credit begins only prospectively.

8. PENN also fails to provide the notice required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). The SPD's Wellness Credit section describes the tobacco standard, the Alternative Standard Request, and the 210-day cessation-program requirement, but does not provide contact information for obtaining the alternative standard and does not state that PENN will accommodate recommendations from a participant's personal physician. The 2024 Benefits Guide likewise describes the Wellness Credit and tells tobacco users that they may complete an approved cessation program or reasonable alternative, but the Wellness Credit section does not

provide the required contact information or physician-accommodation statement. PENN does list general Benefits Center and Plan Administrator contact information elsewhere, but the regulation requires the disclosure in all Plan materials describing the terms of the wellness program, not merely somewhere else in the document.

9. This Complaint alleges that PENN imposes a health-based premium differential by withholding the Wellness Credit from participants based on tobacco use without satisfying the conditions necessary to invoke ERISA's wellness program exception. PENN bears the burden of establishing any affirmative defense on which it relies. There is no statement in the Wellness Credit materials that a participant who satisfies the alternative standard will receive the same, full reward for the entire Plan Year, including the portion of the reward attributable to the period before completion. And PENN's materials do not provide the contact information and personal-physician disclosure that ERISA expressly requires.

10. Participants like Plaintiffs may challenge a premium differential when the employer's own Plan materials show that the asserted wellness program exception is deficient. Once a participant alleges that the differential violates ERISA's anti-discrimination provisions and identifies facts supporting the deficiencies in the wellness program, PENN must establish that the exception applies. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (explaining that statutory exemptions structured as exceptions are ordinarily affirmative defenses that must be pleaded and proved by the party invoking them).

11. Plaintiffs are former and current employees of PENN subsidiaries that are participating employers under the Plan. Plaintiffs participated in PENN-sponsored medical coverage. PENN has not provided Plaintiffs with the Wellness Credit, and Plaintiffs therefore paid

more for that coverage than similarly situated participants who satisfy PENN's tobacco-use standard.

12. Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries to recover the amounts by which they were required to pay more for medical coverage and to obtain appropriate equitable and Plan-wide relief. Plaintiffs also seek disgorgement of the profits PENN obtained by administering the Wellness Credit differential for its own financial benefit. PENN's own Plan documents state that PENN and participants share the cost of benefits, that PENN pays its portion from general assets, and that the Wellness Credit provided by the Employer offsets participants' pre-tax medical-premium deductions. Each Wellness Credit PENN unlawfully withheld increased the participant's required contribution and allowed PENN to retain corporate funds it otherwise would have used to provide the promised credit.

## PARTIES

13. Plaintiff Ben Retherford is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in Champaign County. Plaintiff is a former employee of a subsidiary of PENN. He participated in the Plan and did not receive the Wellness Credit, causing him to pay more for PENN-sponsored medical coverage than similarly situated participants who satisfy PENN's tobacco-use standard.

14. Plaintiff Susan Blackburn is, and at all times mentioned herein was, an individual citizen of the State of Ohio residing, during the relevant time, in the counties of Franklin and Pickaway. Plaintiff is a current employee of Central Ohio Gaming Ventures, LLC, doing business as Hollywood Casino Columbus, which is a participating employer in the PENN-sponsored Plan. Plaintiff participated in the Plan and did not receive the Wellness Credit, causing her to pay more

for PENN-sponsored medical coverage than similarly situated participants who satisfy PENN's tobacco-use standard.

15. Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

16. Defendant PENN Entertainment, Inc. is a Pennsylvania corporation with its principal place of business in Wyomissing, Pennsylvania. PENN is the Plan Sponsor and Plan Administrator of the Plan. It exercises authority and control over the administration of the Wellness Credit and the participant contributions used to pay for Plan coverage.

17. At all times relevant to this lawsuit, PENN sponsored, maintained, and administered the Plan. As of December 31, 2025, PENN reported approximately 23,441 full-time and part-time employees. The Plan is an employee welfare benefit plan subject to ERISA pursuant to 29 U.S.C. § 1002(3).

**<u>JURISDICTION AND VENUE</u>**

18. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this suit seeks relief under ERISA, a federal statute.

19. This Court has personal jurisdiction over PENN because PENN is incorporated in Pennsylvania, maintains its principal executive offices in Wyomissing, Pennsylvania, and administers the Plan from Wyomissing, Pennsylvania, within this District.

20. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District and PENN resides and may be found in this District. PENN's principal place of business and the Plan Administrator's address are in the Eastern District of Pennsylvania.

**<u>FACTUAL BACKGROUND</u>**

## I. DEFENDANT'S WELLNESS CREDIT DIFFERENTIAL VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

### A. Statutory and Regulatory Requirements

21. ERISA prohibits any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

22. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

23. Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

24. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Act in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

25. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

26. The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is

noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***.").

**B. Regulatory Criteria**

27. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that recommendations from participants' personal physicians will be accommodated. *See* § 2590.702(f)(4)(v).

28. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29. Regarding the first criterion, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30. A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

31. The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id.* The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id.*; Final Regulations, 33180.

32. For health-contingent wellness programs, the Final Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge participants more based on tobacco use and fail to provide the prescribed notice cannot invoke the wellness-program exception.

## II. DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

33. PENN's Wellness Credit creates a premium differential based on tobacco use. Under the SPD, an eligible participant who is not a tobacco user receives a $50 monthly Wellness Credit, or $100 when both the participant and covered spouse are non-tobacco users. SPD at 22–23. The credit reduces the medical premiums deducted from the participant's pay on a pre-tax basis. *Id.* A participant who does not satisfy PENN's tobacco-use standard does not receive that reduction and therefore pays more for the same medical coverage because of a health-status-related factor. *Id.*

34. ERISA permits a health-contingent tobacco premium differential only when it is imposed as part of a wellness program that satisfies every applicable statutory and regulatory requirement. *See* 29 C.F.R. § 2590.702(f)(4). Among other things, the Plan must make available a reasonable alternative standard, allow participants who satisfy that standard to receive the same, full reward, provide at least one opportunity each year to qualify for that reward, and disclose the availability and terms of the alternative standard in all Plan materials describing the premium differential.

35. The Final Regulations illustrate what a compliant tobacco program requires. In Example 6, tobacco users may avoid the premium differential by participating in a smoking-cessation program, regardless of whether they successfully stop using tobacco. 78 Fed. Reg. at 33180. The program is available without cost, is not unreasonably burdensome, provides access to the full reward, explains how participants may enroll, supplies contact information, and states that the Plan will accommodate recommendations from a participant's personal physician. The premium differential is permissible only because the plan satisfies each of those requirements.

36. PENN's Plan contains an alternative standard, but the materials describing it do not provide the protections that make the regulatory example compliant. The SPD requires a tobacco user to complete an Alternative Standard Request form, register within 30 days, and attend at least 80% of an Approved Tobacco Cessation Program within 210 days. SPD at 22–23. If those requirements are satisfied, the SPD says only that the Wellness Credit "will be applied in the current Plan Year and applicable federal, state and local taxes adjusted." It does not state that PENN will restore the portion of the Wellness Credit attributable to the months before the alternative standard was completed.

37. The 2024 Benefits Guide confirms the same premium differential. *See* Ex. B at 12. It advertises a $23.08 bi-weekly reduction in medical premiums when one covered person is tobacco-free and a $46.15 bi-weekly reduction when both the team member and covered spouse are tobacco-free. *Id.* It states that a participant may earn the Wellness Credit by certifying that the participant has not used tobacco within three months of eligibility or by completing an approved tobacco-cessation program or reasonable alternative. *Id.* It warns that the Wellness Credit will not be applied if the certification is not completed. But the Wellness Credit section does not say that completion of the alternative restores prior credits for the Plan Year.

38. PENN's notice is independently deficient. The SPD's Wellness Credit section does not provide contact information for obtaining the Alternative Standard Request or alternative standard and does not state that PENN will accommodate recommendations from a participant's personal physician. The Benefits Guide's Wellness Credit section likewise lacks both disclosures; it merely directs participants to search the Benefits Hub for "Wellness Credit." The SPD contains general Plan Administrator contact information elsewhere, and the Benefits Guide provides general Benefits Center resources elsewhere, but neither cures the omission from the participant-

facing materials that actually describe the terms of the Wellness Credit. Section 2590.702(f)(4)(v) requires the disclosure—including contact information and the physician-accommodation statement—in all Plan materials describing the terms of the outcome-based wellness program.

39. The full reward defect is equally apparent from the documents. PENN gives participants up to 210 days after requesting an alternative standard to attend the required cessation program. During that period, a tobacco user continues to pay the higher medical premium unless PENN credits the withheld reward retroactively. Yet neither the SPD nor the Benefits Guide tells participants that satisfying the alternative entitles them to the Wellness Credit for the entire Plan Year or that PENN will restore the credits withheld before completion.

40. The contrast in the SPD is telling. PENN expressly reserves the right to require a participant to repay the Wellness Credit retroactively for the applicable Plan Year if PENN determines that the participant provided false information or failed to report a change in tobacco use. But when describing what PENN owes after a participant satisfies the alternative standard, the SPD does not promise retroactive credit. It says only that the Wellness Credit "will be applied in the current Plan Year." SPD at 23. On its face, the Plan therefore provides PENN an express retroactive remedy while omitting the retroactive make-whole treatment that ERISA requires for participants who satisfy the alternative standard.

41. PENN therefore fails at least two independent conditions necessary to invoke ERISA's wellness program exception. First, the Plan materials do not make the same, full reward available by stating that participants who satisfy the alternative will receive the entire Wellness Credit for the Plan Year. Second, the materials describing the Wellness Credit do not provide the prescribed notice, including contact information for obtaining the alternative standard and a

statement that PENN will accommodate recommendations from participants' personal physicians. See 42 U.S.C. § 300gg-4(j)(3)(D)–(E); 29 C.F.R. § 2590.702(f)(4)(iv)–(v).

42. To comply with ERISA, PENN should have stated clearly that any participant who satisfies the alternative standard receives the same, full Wellness Credit available to a participant who satisfies the initial tobacco-free standard for that Plan Year, including the portion attributable to the period before completion. The Plan also should have made the cessation program meaningfully accessible, at no cost and without unreasonable burden, and should have provided the disclosures the regulation prescribes.

43. PENN also should have included clear and specific notice of the reasonable alternative standard in every Plan material describing the Wellness Credit. That notice should have explained how to obtain the alternative standard, provided contact information for doing so, stated that the same reward remained available by different means, and advised participants that PENN would accommodate recommendations from their personal physicians.

44. Plaintiffs were subject to this uniform program. They participated in PENN-sponsored medical coverage but did not receive the Wellness Credit. Their pay statements do not identify any Wellness Credit discount. PENN's Plan materials did not inform them that, if they satisfied the alternative standard, they would receive the full Wellness Credit for the entire Plan Year, including the portion corresponding to the period before completion, and the materials describing the Wellness Credit did not provide the contact information and physician-accommodation statement required by the regulation. Even if Plaintiffs wanted to take advantage of that avenue, they did not know it existed.

45. The resulting premium differential is not exempt from ERISA's anti-discrimination rule merely because PENN describes the lower premium as a "Wellness Credit." The regulation

defines the reward broadly, and economically the program charges participants who do not satisfy the tobacco standard more for identical coverage. 29 C.F.R. § 2590.702(f)(1)(i). Because PENN has not satisfied the conditions governing that health-based differential, it cannot invoke the wellness program exception.

46. Allowing an employer to withhold a premium credit from tobacco users for months while they complete an employer-selected alternative standard, without promising to restore that credit and without giving the prescribed notice, would defeat ERISA's anti-discrimination protections. PENN's Wellness Credit structure shifts medical-premium costs to participants based on tobacco use while allowing PENN to retain the corresponding corporate funds.

## III. DEFENDANT'S SELF-DEALING AND PROFIT FROM THE WELLNESS CREDIT DIFFERENTIAL

47. PENN administers the Wellness Credit by deciding which participants qualify, controlling the Alternative Standard Request process, determining when the credit is applied, and controlling the pre-tax payroll deductions used to pay for Plan coverage. The SPD expressly states that the "Employer will provide" the Wellness Credit and that the credit "will be used to offset your medical coverage premiums deducted from your pay, on a pre-tax basis." SPD at 22. Thus, the amount PENN chooses to provide as a Wellness Credit directly affects how much of a participant's wages are withheld for medical coverage.

48. The Plan documents also establish the financial relationship that makes PENN's profit concrete. The SPD states that contributions to the Plan come from both the Employer and participants; that PENN's national medical plans are self-funded by the Employer; that insurance premiums are paid in part by the Employer out of its general assets and in part by participants; and that "[y]ou and the Employer share in the cost" of Plan benefits, with the Employer paying its portion from general assets and participants paying their portion through salary reductions. SPD

at 24. Against that funding structure, every Wellness Credit PENN withholds causes the participant to bear more of the cost and permits PENN to retain corporate funds it otherwise would have used to provide the promised credit or fund its share of coverage.

49. That retained amount is a direct financial benefit to PENN. The core fiduciary injury alleged here is not dependent on showing a corresponding balance-sheet loss to the Plan. PENN used its control over Plan administration, participant payroll contributions, and the Wellness Credit to increase participant payments and reduce its own outlay. In the Third Circuit, "ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs," and § 1109 permits recovery of fiduciary profit made through use of Plan assets. *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415–16 (3d Cir. 2013). PENN therefore may not keep the financial benefit generated by its own fiduciary breach merely because it characterizes the transaction as a withheld credit rather than an added surcharge.

50. Participant premium contributions withheld from wages for Plan coverage are Plan assets as of the earliest date they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1). PENN exercised authority or control over those contributions and used the higher participant contributions generated by withholding the Wellness Credit to reduce the amount of corporate funds PENN otherwise needed to provide or retain for coverage. That use of Plan assets for PENN's own financial benefit constitutes self-dealing and a prohibited transaction. At a minimum, PENN obtained profits, savings, float, and the time value of the corporate funds it retained; the amount of those profits is uniquely within PENN's records and can be determined in discovery.

## CLASS DEFINITION AND ALLEGATIONS

51. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

52. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> Wellness Credit Class
> All individuals residing in the United States who, during the applicable limitations period through the time of judgment, participated in a PENN-sponsored medical plan and paid more for medical coverage because PENN withheld some or all of the Wellness Credit based on the tobacco-use status of the participant or a covered spouse.

53. Excluded from the Class are Defendant's officers and directors.

54. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

55. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

56. Numerosity. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members is impracticable. PENN reported approximately 23,441 full-time and part-time employees as of December 31, 2025, and the Wellness Credit is offered broadly to eligible team members in PENN-sponsored medical plans. Plaintiffs are informed, believe, and thereon allege that the proposed Class contains hundreds or thousands of participants. Their identities and the amounts withheld are readily ascertainable from PENN's enrollment and payroll records.

57. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether PENN's Wellness Credit creates a premium differential based on a health-status-related factor;

b. Whether PENN's Alternative Standard provides the same, full reward to participants who satisfy it, including the portion of the Wellness Credit attributable to the period before completion;

c. Whether PENN provided the required notice in all Plan materials describing the terms of the Wellness Credit;

d. Whether PENN provided contact information for obtaining a reasonable alternative standard and the required statement that participants' personal-physician recommendations would be accommodated;

e. Whether PENN's Wellness Credit program violates ERISA and the Final Regulations;

f. Whether PENN breached its fiduciary duties by administering participant premium contributions and the Wellness Credit for its own financial benefit;

g. Whether PENN breached its fiduciary duties by failing to periodically review the Wellness Credit, the alternative-standard process, and participant communications to ensure compliance with ERISA and applicable regulations;

h. The appropriate mechanisms to determine Class-wide relief, restitution, and disgorgement of PENN's profits;

58. Typicality. Plaintiffs' claims are typical of the claims of the members of the Class because all Class members were subject to the same Wellness Credit terms and paid more for medical coverage when PENN withheld some or all of the Wellness Credit based on tobacco-use status. Plaintiffs advance the same claims and legal theories on behalf of themselves and all Class members, and the principal questions concerning PENN's uniform Plan terms, notices, and administration can be resolved with common proof.

59. Adequacy of Representation. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and Class members participated in health and welfare benefits offered by PENN and were harmed by the same alleged premium differential and fiduciary misconduct. Plaintiffs have retained competent counsel experienced in complex ERISA and class-action litigation. Plaintiffs have no interests antagonistic to the Class, and PENN has no defenses unique to Plaintiffs that defeat adequacy.

60. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

61. Plaintiffs seek injunctive, declaratory, restitutionary, and other equitable relief on grounds generally applicable to the Class. Unless the Class is certified, PENN may continue to profit from the allegedly unlawful Wellness Credit structure, while participants continue to bear the increased premium cost. Class-wide relief will permit the Court to address the uniform Plan terms, notices, and fiduciary practices in a single proceeding.

## CAUSES OF ACTION

## COUNT I

### UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE THE FULL REWARD

**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

62. Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

63. ERISA prohibits group health plans from requiring participants to pay more for coverage based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). Tobacco use is a health-status-related factor. PENN's Wellness Credit causes participants who do not satisfy its tobacco-use standard to pay more for the same medical coverage and is therefore unlawful unless PENN satisfies every condition of the narrow statutory and regulatory exception for health-contingent wellness programs. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. §§ 300gg-4(b)(2)(B), 300gg-4(j)(3); 29 C.F.R. § 2590.702(f)(4).

64. Among those mandatory conditions, PENN must make available a reasonable alternative standard through which all similarly situated participants may obtain the same, full reward available to participants who satisfy the Plan's initial tobacco-use standard. 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). The full reward cannot be limited to prospective application of the Wellness Credit or otherwise reduced based on when a participant satisfies the alternative standard during the Plan Year. *See* 29 C.F.R. § 2590.702(f)(1)(v) (explaining how they must receive "the same reward" as those who do not pay the surcharge).

65. PENN offers an alternative standard under which a tobacco user must complete an Alternative Standard Request form, register within 30 days of the request, and attend at least 80% of an Approved Tobacco Cessation Program within 210 days. But the SPD states only that, after those requirements are satisfied, the Wellness Credit "will be applied in the current Plan Year." The Plan materials do not state that the participant will receive the Wellness Credit for the portion of the Plan Year before satisfaction of the alternative standard.

66. Because the Plan can require a participant to spend months satisfying the alternative standard while continuing to pay the higher medical premium, and then refuse to provide that participant with the full, annual value upon completion, PENN does not make the same, full reward

available. It must ensure all participants who satisfy a reasonable alternative, regardless of when during the Plan year, obtain the full annual amount of the Wellness Credit attributable to that period. The Plan materials do not promise that make-whole credit.

67. The SPD confirms the asymmetry. PENN expressly reserves the right to recover the Wellness Credit retroactively for the applicable Plan Year when it determines that a participant provided false information or failed to report a change in tobacco status, yet the SPD does not state that PENN will provide the credit retroactively when a participant satisfies the alternative standard. Upon information and belief, PENN does not provide all participants who satisfy the alternative standard the full Wellness Credit for the entire Plan Year.

68. By providing an alternative standard that does not make the full reward available for the entire Plan Year, PENN fails to satisfy 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4)(iv). PENN therefore cannot invoke the wellness program exception.

69. The resulting Wellness Credit differential is an unlawful difference in the cost of coverage based on a health-related factor, in violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(b).

70. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to enjoin practices that violate ERISA and to obtain other appropriate equitable relief to redress such violations or enforce ERISA. Because PENN's Wellness Credit program does not satisfy the criteria necessary to qualify for the statutory exception, Plaintiffs and Class Members are entitled to appropriate equitable relief under ERISA § 502(a)(3), including restitution, equitable surcharge, disgorgement, an accounting, and appropriate declaratory relief.

**COUNT II**

UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE REQUIRED NOTICE
**(Violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v))**

71. Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

72. ERISA prohibits group health plans from requiring participants to pay more for coverage based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). PENN's Wellness Credit imposes a tobacco-based premium differential and is therefore unlawful unless PENN satisfies every condition of the narrow statutory and regulatory exception for health-contingent wellness programs. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. §§ 300gg-4(b)(2)(B), 300gg-4(j)(3).

73. To qualify for that exception, PENN was required to disclose the availability of a reasonable alternative standard in all Plan materials describing the terms of the Wellness Credit. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v).

74. The required notice must inform participants that a reasonable alternative standard (or, where applicable, a waiver) is available, provide contact information for obtaining the alternative standard, and state that recommendations of a participant's personal physician will be accommodated. 29 C.F.R. § 2590.702(f)(4)(v). These disclosures must appear in every participant-facing Plan material that describes the terms of the outcome-based Wellness Credit program.

75. PENN's SPD describes the Wellness Credit in detail, including its amount, the tobacco-free standard, the Alternative Standard Request, the 30-day registration requirement, and the 210-day cessation-program requirement. But that Wellness Credit section does not provide contact information for obtaining the alternative standard and does not state that PENN will

accommodate recommendations from participants' personal physicians. The 2024 Benefits Guide likewise describes the Wellness Credit and the alternative but omits those required disclosures from the Wellness Credit section.

76. PENN's Plan materials also fail to tell participants that satisfying the reasonable alternative standard entitles them to the same, full reward available to participants who satisfy the initial tobacco-use standard, including the portion of the Wellness Credit attributable to the period before completion. Instead, the SPD says only that the Wellness Credit "will be applied in the current Plan Year." A reasonable participant reviewing these materials would not be told that PENN must make the participant whole for the entire Plan Year.

77. The omissions appear in the Plan's two principal participant-facing documents describing the Wellness Credit. They are therefore not isolated drafting issues but uniform deficiencies in PENN's description of the program.

78. PENN does provide general contact information elsewhere in the SPD and Benefits Guide. But those general resources do not satisfy the regulation's separate command that all materials describing the terms of the outcome-based wellness program include contact information for obtaining a reasonable alternative standard and the personal-physician statement. An employee should not have to infer that a generic Benefits Center or Plan Administrator contact is the legally required route to obtain an alternative that the Wellness Credit section itself does not identify.

79. PENN's failure to provide the prescribed notice independently prevents it from invoking the wellness program exception, regardless of whether PENN satisfied any other statutory or regulatory requirement.

80. The resulting Wellness Credit differential is an unlawful difference in the cost of coverage based on a health-status-related factor, in violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4.

81. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes Plaintiffs and Class Members to seek appropriate equitable relief to enjoin PENN's unlawful practices, redress PENN's violations, and enforce ERISA. Plaintiffs and Class Members are therefore entitled to appropriate equitable relief, including restitution, disgorgement, equitable surcharge, an accounting, declaratory relief, and such other relief as the Court deems just and proper.

**COUNT III**
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109; Brought Under 29 U.S.C. § 1132(a)(2))**

82. Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

83. At all relevant times, PENN was a fiduciary of the Plan because PENN is the named Plan Administrator and exercised discretionary authority and control over Plan administration and authority or control over the management and disposition of Plan assets, including participant contributions withheld from wages for medical coverage. 29 U.S.C. § 1002(21)(A).

84. ERISA required PENN to act "solely in the interest of participants," with the "care, skill, prudence, and diligence" of a prudent fiduciary, "in accordance with the documents and instruments governing the plan," and to refrain from dealing with Plan assets in its own interest. 29 U.S.C. §§ 1104(a)(1), 1106(b)(1). The duty of loyalty also prohibits an ERISA fiduciary from using its fiduciary position to generate profits for itself at participants' expense.

85. PENN exercised fiduciary authority by exercising discretionary authority over the Plan's assets, controlling participant communications about the program, and controlling the manner in which the terms of the Plan are reviewed to ensure compliance with ERISA.

86. Participant contributions withheld from wages for contribution to a welfare plan become Plan assets as of the earliest date on which they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1), (c). Plaintiffs' medical-premium contributions were withheld from payroll on a pre-tax basis to fund Plan coverage. By withholding the Wellness Credit, PENN caused participants to contribute more of their wages toward the same coverage and exercised control over those additional participant contributions.

87. PENN's own Plan documents show why that administration generated a corresponding financial benefit for PENN. The SPD states that contributions come from both PENN and participants; that PENN's national medical plans are self-funded; that PENN and participants "share in the cost" of Plan benefits; that PENN pays its portion from general assets while participants pay through salary reductions; and that the Employer-provided Wellness Credit offsets participants' medical premiums. Each unlawfully withheld $50 or $100 Wellness Credit therefore increased the participant-funded portion of coverage and allowed PENN to retain corporate funds it otherwise would have used to provide the promised credit or fund its share of coverage.

88. That profit is actionable even without pleading that the Plan suffered a matching balance-sheet loss. The Third Circuit has held that "ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs" and recognized that § 1109 permits recovery of the fiduciary's profit from misuse of Plan assets. *Edmonson*, 725 F.3d at 415–16. PENN obtained the

use and benefit of the corporate funds it retained, including the value of avoided contributions, float, interest, investment returns, and other financial benefits generated by those retained funds.

89. PENN also breached its fiduciary duties in administering and communicating the Wellness Credit. PENN controlled and distributed Plan materials describing the tobacco-based premium differential without stating that participants who satisfy the alternative standard will receive the full Wellness Credit for the entire Plan Year, without providing the required contact information in the materials describing the program, and without disclosing that recommendations from participants' personal physicians would be accommodated.

90. To the extent PENN contends that its Alternative Standard provides retroactive, make-whole credit or that participants can obtain a physician-directed alternative through some other process, PENN failed to administer and communicate those rights prudently. PENN did not clearly disclose those material terms in the SPD or Benefits Guide sections that describe the Wellness Credit, depriving participants of information necessary to exercise their rights.

91. Upon information and belief, PENN further failed to conduct a prudent and periodic review of the Wellness Credit's administration, the handling of participant premium contributions, the Alternative Standard process, and the communications provided to participants. PENN thereby permitted the collection of increased participant contributions and the corresponding corporate savings to continue year after year for its own financial benefit.

92. PENN's conduct violated ERISA's duties of loyalty and prudence because PENN administered the Wellness Credit for its own financial benefit, used or controlled participant contributions in a manner that reduced PENN's own outlay, and failed to provide participants with material information necessary to understand and exercise their rights under the Plan. 29 U.S.C. § 1104(a)(1).

93. PENN's conduct also constituted prohibited transactions. PENN caused Plan assets to be transferred to, or used for the benefit of, a party in interest—namely, itself—in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). PENN also dealt with Plan assets in its own interest or for its own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

94. As a result of PENN's breaches, PENN obtained profits and other financial benefits by increasing the amount paid from participant wages and retaining corporate funds it otherwise would have used to provide the Wellness Credit or fund its share of medical coverage. The precise amount of PENN's profits, avoided expenditures, float, interest, and other benefits is within PENN's possession and can be determined through an accounting and discovery.

95. Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Under 29 U.S.C. § 1109, a breaching fiduciary is personally liable to restore to the Plan profits made through the use of Plan assets and is subject to such other equitable or remedial relief as the Court deems appropriate. Plaintiffs therefore seek disgorgement and restoration of PENN's ill-gotten profits, an accounting, removal or other appropriate fiduciary relief, and all other Plan-wide relief authorized by §§ 1109 and 1132(a)(2).

## COUNT IV
## BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
## (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106; Brought Under 29 U.S.C. § 1132(a)(3))

96. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein, including the allegations concerning PENN's fiduciary status, administration of the Wellness Credit, control over participant premium contributions, use of those contributions for its own financial benefit, and failure to provide participants with material information concerning their ability to obtain the full reward.

97. PENN breached its fiduciary duties of loyalty and prudence by administering and communicating the Wellness Credit for its own financial benefit rather than solely in the interests of Plaintiffs and other Plan participants. PENN withheld the Wellness Credit from Plaintiffs, causing them to pay more for medical coverage, while failing to provide clear notice that satisfaction of the alternative standard would entitle them to the full Wellness Credit for the Plan Year and failing to provide the disclosures required to access and tailor the alternative standard.

98. To the extent PENN contends that its Alternative Standard provides retroactive credit or some additional physician-directed alternative, PENN failed to administer or communicate those rights prudently. PENN did not give Plaintiffs the information necessary to understand that they could obtain the full reward, identify the proper contact for obtaining the alternative standard from the Wellness Credit materials themselves, or understand that recommendations from their personal physicians would be accommodated.

99. Because of PENN's fiduciary breaches, Plaintiffs paid more for Plan coverage than they would have paid had PENN administered the Wellness Credit and alternative standard process in compliance with ERISA. They were deprived of a meaningful opportunity to exercise their rights under the Plan and of the full Wellness Credit that ERISA requires be made available to similarly situated participants.

100. Upon information and belief, PENN retained and used the corresponding corporate funds for its own benefit. Plaintiffs consequently lost the use of the amounts deducted from their paychecks that should have been offset by the Wellness Credit, while PENN obtained the corresponding savings and financial benefits through its possession and use of the retained funds.

101. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs and the Class seek appropriate individual equitable relief necessary to redress PENN's fiduciary breaches,

including restitution, equitable surcharge, disgorgement, an accounting, the imposition of a constructive trust or equitable lien over traceable funds or profits, declaratory relief, and such other appropriate equitable relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court award the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that PENN's tobacco-based Wellness Credit premium differential violates ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order requiring PENN to reimburse or credit all Class Members for the amounts by which they paid more for medical coverage because PENN unlawfully withheld some or all of the Wellness Credit;

D. A declaratory judgment that PENN breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 by, *inter alia*, administering the Wellness Credit and participant premium contributions for PENN's own financial benefit, failing to provide the same, full reward, failing to provide the prescribed notice, and failing to adequately monitor the Plan terms, Alternative Standard, payroll administration, and participant communications to ensure compliance with ERISA and the applicable regulations;

E. An Order requiring PENN to provide an accounting of all Wellness Credits withheld, participant premium contributions attributable to the Wellness Credit differential, and profits or other financial benefits PENN obtained from the challenged practices;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining PENN from further violating ERISA with respect to the Plan; requiring PENN to provide compliant Wellness Credit notices and a reasonable alternative standard that makes the same, full reward available for the entire Plan Year; and requiring PENN to correct the administration of the Wellness Credit going forward;

G. Disgorgement of any benefits, profits, avoided expenditures, float, interest, investment returns, or other financial benefits PENN received or enjoyed through the challenged Wellness Credit practices and fiduciary breaches;

H. Restitution of the amounts by which Plaintiffs and Class Members paid more for medical coverage because PENN withheld the Wellness Credit;

I. Equitable surcharge from PENN totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by PENN as a result of its administration of the Wellness Credit;

J. Relief to the Plan under 29 U.S.C. §§ 1109 and 1132(a)(2), including disgorgement and restoration of any profits PENN made through use of Plan assets, an accounting, removal or replacement of fiduciaries if appropriate, and all other equitable or remedial relief the Court deems appropriate;

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: September 18, 2026

Respectfully submitted,

SIRI & GLIMSTAD LLP
*/s/ Michael Connett*

Michael Connett (Bar No. 311859)
Oren Faircloth (*pro hac vice* forthcoming)
William Payne (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (929) 677-5181
E: mconnett@sirillp.com
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*